ROBINSON v. JOHNSTON, Warden.

No. 23083.

District Court, N. D. California, S. D.

Aug. 9, 1943.

Fred McDonald, of San Francisco, Cal., for petitioner.

Frank J. Hennessy, U.S. Atty., and A. J. Zirpoli, Asst. U.S. Atty., both of San Francisco, Cal., for respondent.

ROCHE, District Judge.

The petitioner was indicted with his wife and father in the United States District Court for the Western District of Kentucky on a charge in two counts, the first, conspiracy to kidnap, and the second, kidnapping, committed in October, 1934, in that district, in violation of Title 18 U.S.C.A. §§ 408c and 408a. In 1935, while petitioner was a fugitive from justice, his co-defendants were tried before a jury in said District Court and acquitted on both counts.

The petitioner was arrested in Glendale, California, May 11, 1936, transported by airplane to Louisville, Kentucky, arriving May 12, 1936, arraigned and pleaded guilty on May 13, 1936, and on that same day was sentenced to life imprisonment. He is now confined serving that sentence in the federal penitentiary at Alcatraz in the Northern District of California. In 1939 he filed in this court his petition for a writ of habeas corpus, alleging that at the time he pleaded guilty he was insane; that both the judge and the United States Attorney knew the facts concerning petitioner's insanity; that he had no attorney, that none was provided for him and that he did not intelligently waive his right to counsel, and that he did not know that he was entitled to that right.

Petitioner further alleged that on October 6, 1936, his then attorneys filed in the United States District Court for the Western District of Kentucky a motion to vacate the judgment and sentence imposed upon the petitioner and to grant to the defendant a new trial and to grant leave to the defendant upon granting a new trial to withdraw the plea of guilty and to enter a plea of not guilty. Included among other grounds for the motion were those set forth in the present petition. An order denying this motion was entered on October 12, 1936, with leave to the "defendant, Thomas Henry Robinson, Jr., to tender within ten days from this date additional affidavits." In a memorandum opinion, findings of fact and conclusions of law filed with this order the court impliedly found Robinson sane at the time the offense was committed and also when he pleaded guilty, and that he had waived counsel. On November 5, 1936, the court gave permission for the withdrawal of the motion together with all supporting papers, but did not expressly vacate the order of October 12.

Believing that the trial court's order conclusively determined the question of petitioner's sanity at the time of his plea and of his alleged waiver of counsel, this court denied the application for the writ. The order was affirmed by the Ninth Circuit Court of Appeals, one judge dissenting. Robinson v. Johnston, 118 F.2d 998. The Supreme Court granted certiorari, ordered the vacation of the judgment and remanded the case with leave "for further proceedings, including leave to petitioner to apply for a hearing before the court en banc." Robinson v. Johnston, 316 U.S. 649, 62 S.Ct. 1301, 86 L.Ed. 1732.

The Circuit Court of its own motion ordered an en banc hearing and appointed counsel for the petitioner. With one judge dissenting the court adopted the view of the dissent on the first hearing and held that the District Court's order of October 12, 1936, denying Robinson's motion for a new trial, was tentative only and was impliedly vacated by the later order permitting withdrawal of the motion; that it was therefore not conclusive on the factual questions tendered by the petition and hence issuance of the writ was necessary. Accordingly, the order

denying the petition was reversed and the case remanded to this court for a hearing and determination of the merits. Robinson v. Johnston, 9 Cir., 130 F.2d 202.

Petitioner raises three principal points:

1. That at the time of the commission of the alleged offense, and at the time of the entry of his plea and the imposition of sentence, the petitioner had been adjudged insane by two courts of competent jurisdiction in the state of Tennessee. That these judgments were in full force and effect, and that this fact was known to the trial Judge, the District Attorney and the Agents of the Department of Justice, yet despite this knowledge, the court proceeded without inquiry into the petitioner's mental capacity, to accept his plea of guilty, without counsel, and to impose sentence on the petitioner.

2. That the trial court failed to inform the petitioner as to his right to counsel and failed to determine whether or not the petitioner competently or intelligently waived the right of counsel, and proceeded to accept his plea and impose sentence upon him without petitioner being represented by counsel.

3. That the petitioner was coerced into entering his plea by the action of the agents of the Federal Bureau of Investigation and the prosecuting officers.

■ Petitioner's third point is unsupported by the evidence, unless the breathless speed with which he was deprived of his liberty be deemed, in iteslf, a form of coercion. The following discussion, therefore, will deal with the first two grounds.

The record shows that in 1929 petitioner was adjudged insane in a criminal action in Tennessee and committed to an institution. His insanity was diagnosed as schizophrenia and was declared by the physicians to be progressive and incurable. A year later he was again found insane in a civil proceeding and his father was appointed his guardian. Under Tennessee law the guardian could secure release of a patient by accepting full responsibility for his conduct and petitioner was so released to his father shortly after his second commitment, despite the fact that the Superintendent of the institution advised strongly against it. At the time of petitioner's arraignment and plea these judgments were in full force and effect and no decree of restoration to capacity had ever been entered.

The trial court knew these facts. In his memorandum opinion the Judge states that he had presided at the trial of petitioner's two co-defendants under the indictment and was thoroughly familiar with all the facts in the case as presented at that trial and had heard witnesses testify as to the activities and conduct of petitioner for a long period prior to the offense for which he was indicted.

■ It is well settled that when it is once established that a person has been legally adjudged mentally incompetent, the presumption of sanity no longer prevails; in its place there arises a presumption of lack of mental capacity, and the burden of proving mental capacity devolves upon him who asserts it. Hall v. Johnston, 9 Cir., 91 F.2d 363; Frame v. Hudspeth, 10 Cir., 109 F.2d 356. It is equally well settled that an insane person can not plead nor can he be sentenced. The court was thus under a duty to determine petitioner's mental condition before accepting his plea of guilty. When the court, or an officer of the court, has knowledge requiring the exercise of a duty on behalf of the accused, failure to exercise such duty constitutes a denial of due process. Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; Hall v. Johnston, 9 Cir., 91 F.2d 363, supra.

■ However, whether the petitioner was sane or insane on May 13, 1936, does not control the question here involved. The right to the assistance of counsel, guaranteed by the Sixth Amendment to the Constitution, is not limited to the mentally incompetent. It is one of the safeguards deemed necessary to insure fundamental rights of life and liberty. While it may be waived, such waiver will never be presumed but must be clearly shown, either as a matter of record or by all the surrounding circumstances, including the background, experience, and conduct of the accused. Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461. It is admitted that the petitioner did not have the assistance of counsel at his arraignment. No waiver appears of record. Whether petitioner did intelligently waive his constitutional right must therefore be determined from a review of the events, as disclosed by the record,

of the forty-eight hours that elapsed between his arrest in California and his arraignment in Louisville, Kentucky.

The petitioner arrived in Louisville at 11:30 a.m. on May 12, 1936, after an all night plane trip from Glendale, California, where he had been arrested the evening before. He was in the custody of agents of the Federal Bureau of Investigation and was promptly taken from the airport to their Louisville office. There he was held and questioned until four o'clock the following afternoon. During this time he had no contact with his parents, who lived in Nashville, Tennessee, some two hundred miles away, nor did he see counsel. His arraignment was set for 2:30 p.m. on May 13. On the morning of May 13, Mr. Gabbard, an associate of Mr. Huggins who had defended petitioner's wife at her trial the year before, informed the Judge that a Mr. Ross of Nashville expected to represent the defendant, at his parents' request. At 2 p.m. Mr. Ross telephoned the Judge that he was detained in trial and could not come but that petitioner's mother and aunt were on their way and petitioner's father would come to Louisville later in the afternoon. Mrs. Robinson and her sister arrived about 5 p.m. and were brought to the Judge's chambers by Mr. Huggins, who introduced them to the Judge and stated that he was present, not as an attorney in the case, but as a friend of the family and of the Court. The mother and aunt were then taken to the petitioner who had been brought from the F. B. I. office to the United States Marshal's hold-over room. Shortly thereafter Robinson, Sr., arrived and from this point on the picture is one of confusion. The father was intoxicated and the mother weeping and hysterical. The petitioner asked Mr. Gabbard to represent him and he replied that there would have to be some arrangements made for a retainer; that he couldn't represent him at that time. Petitioner's mother sought to retain Mr. Huggins. He refused because as defense counsel in the trial the year before he had made statements prejudicial to petitioner.

With counsel thus apparently unavailable, the record shows that petitioner's mother returned to the Judge's chambers and stated that if her son would not be given the death penalty, she wanted him to plead guilty and had so told him. The Judge advised her that the death penalty

would not be imposed. Later, petitioner's father came to the Judge's chambers and told the Judge that he did not believe his son was mentally balanced at the time the alleged crime was committed, but he would like for him to plead guilty if the death sentence would not be imposed. The father then returned to the marshal's room and joined his wife in urging petitioner to plead guilty. Petitioner was hesitant but finally agreed. The father so informed the Judge. By this time it was 6 p.m.

The prosecuting attorneys were immediately notified and they hurried to the courtroom. The Judge took his place on the bench, and petitioner, handcuffed to a Department of Justice agent, was brought before the Court. The Judge asked if there were any appearances for the defendant. There was silence. The Judge then asked Mr. Huggins if he were appearing for the defendant. Mr. Huggins replied that he was there merely as a friend of the family and of the Court. The Judge thereupon told the petitioner that the first count of the indictment, charging conspiracy, would be dismissed. The allegations of the second count were then fully explained to petitioner by the Judge and he was asked how he plead, guilty or not guilty, and petitioner answered that he plead guilty. Thereupon the Court sentenced petitioner to imprisonment for life. Petitioner was immediately led from the courtroom by the officers and taken to the railway station where they entrained for the Atlanta Penitentiary. This was forty-eight hours from the time of petitioner's arrest in California.

It is clear from the foregoing that the petitioner neither had counsel nor was ever advised of his right to have counsel appointed to assist him. In this connection the trial Judge, in his memorandum opinion, says:

"This defendant did not have an attorney to advise with at the time he plead guilty, but his father and mother both knew his condition. His father undertook to speak for him, and even though he had no counsel to represent him at that time, those who knew most about his condition and had the right to speak for him did speak. * * *

"The defendant did not request of the presiding Judge that he be accorded the right to confer with counsel nor did his father or mother make any request

of the court that the defendant or either of them be granted time to consult an attorney and no request was made that the court appoint an attorney to represent the defendant. Neither the father nor mother nor anyone else suggested to the court that the defendant on the day he was arraigned and plead guilty was mentally incapable of exercising a reasoning judgment and at the time he plead guilty and was sentenced, he appeared to the court to possess a reasoning intelligence and to have mental powers to determine fully what he wished to do and what his rights were.

"The Judge of the Court knew, from testimony in the former trial, that the defendant had at one time been a law student and possessed some knowledge of legal rights and legal procedure."

Thus the burden of knowing and asserting his constitutional right was placed on petitioner and his parents. That this is not the law was stated unequivocally by the Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, supra, a decision that came down a year after the proceedings involved herein. There the Court, speaking through Mr. Justice Black, said: "The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake— is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record. * * * The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution."

■ Furthermore, the right to the assistance of counsel exists at the time of arraignment as well as at the trial. This was pointed out by Mr. Justice Stephens in Evans v. Rives, 75 U.S.App.D.C. 242, 126 F.2d 633, 637, a case decided by the United States Court of Appeals for the District of Columbia, in 1942. There the court said: "Loss of life or liberty is as certain through sentence upon a plea of guilty as through sentence upon the verdict of a jury. The importance to an accused of the assistance of counsel in the event of a plea of not guilty and trial is patent. It is equally important to an accused, in determining in what manner he may properly meet a charge and before a decision as to the nature of his plea, to have the advice of counsel concerning, for example, the sufficiency of the indictment, the possible existence of a defense or bar under facts known to the accused but the legal import of which he may not know, the nature of the penalty provided for the offense charged, and the probable extent to which it will be imposed, under the facts involved, in the event of a plea of guilty."

■ Even the fact that the accused is himself a lawyer will raise no presumption of waiver. As the Supreme Court, in Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed 680, said, through Mr. Justice Murphy: "To preserve the protection of the Bill of Rights for hard-pressed defendants, we indulge every reasonable presumption against the waiver of fundamental rights. * * * The fact that Glasser is an attorney is, of course, immaterial to a consideration of his right to the protection of the Sixth Amendment. His professional experience may be a factor in determining whether he actually waived his right to the assistance of counsel. * * * But it is by no means conclusive."

■ When this constitutional mandate has not been complied with and the right therein guaranteed has not been competently waived a federal court has no authority to deprive an accused of his life or liberty. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by habeas corpus. Johnson v. Zerbst, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461, supra.

■ Since a waiver is an intentional relinquishment of a known right, and since it appears from the record that petitioner neither knew of his constitutional right nor was advised of it by the trial Judge, this court finds that the petitioner did not intelligently waive his right to the assis-

tance of counsel. It follows, therefore, that the United States District Court for the Western District of Kentucky was without jurisdiction to accept the petitioner's plea or to impose sentence, and that the judgment and sentence so imposed are illegal and void.

Wherefore, in accordance with the foregoing and upon findings of fact and conclusions of law, it is ordered, adjudged and decreed that petitioner's petition for writ of habeas corpus be granted and that petitioner be released from the custody of respondent and returned to the trial Court for further proceedings within ninety (90) days from the entry of judgment herein; and the United States marshal for the Northern District of California is hereby ordered and directed to take into custody and remove and remand petitioner to the United States District Court for the Western District of Kentucky, at Louisville, Kentucky, for further proceedings upon the indictment pending against him in criminal cause number 18917.