## UNITED STATES v. LANDICHO.
### Cr. No. 1602.

District Court, Alaska, Third Division, Anchorage.

Aug. 11, 1947.

Raymond E. Plummer, U.S. Atty., and J. Earl Cooper, Asst. U. S. Atty., both of Anchorage, Alaska, for plaintiff.

Harold J. Butcher, of Anchorage, Alaska, for defendant.

DIMOND, District Judge.

On motion coram nobis of defendant, Frank Landicho, to vacate judgment and grant new trial. Denied.

On June 23, 1941, at a salmon cannery near Naknek, Alaska, Frank Landicho, the defendant in this action, shot and killed Adriano Quitives, as the result of a dispute arising out of a game of chance played for money. In both judicial and extra-judicial voluntary statements the defendant admitted the killing and related the circumstances thereof. The grand jury, on October 7, 1941, indicted for murder in the first degree, the punishment for which prescribed by our code in case of conviction may be either death or life imprisonment in the

discretion of the jury. The defendant's admissions, with such corroborative proof as was doubtless then available, may well have justified the indictment and indicated guilt of the precise crime charged.

The defendant employed to represent him in this court able, reputable and experienced counsel. Upon arraignment, a plea of not guilty was at first entered, and motion for bill of particulars was filed, argued and denied. Two days later the defendant appeared in court with his counsel, and upon permission of the court, withdrew his plea of not guilty and thereupon entered a plea of guilty to the crime of murder in the second degree. On the same day he was sentenced to imprisonment for 20 years and judgment to that effect was entered.

It is understandable that under the circumstances the defendant, having the benefit of advice of competent counsel, should have deemed it expedient to take such a method for avoidance of possible death penalty or imprisonment for life. It is equally understandable that after lapse of many years, when witnesses against him may no longer be available and when at least one witness, apparently an important one, has been removed by death, the defendant should eagerly explore any and every avenue by which his freedom may now be attained.

In November, 1946, more than five years after judgment was pronounced against him, the defendant, asserting that he was then mentally "competent," filed in this court a "motion and petition," hereinafter referred to as a motion, in the nature of a petition for writ of error coram nobis, "to set aside judgment imposed by a court of lacked jurisdiction." This instrument, while involved and tortuous in construction, and defective in explicit factual averment, sufficiently brings before the court the present claim of the petitioner that at the time of the killing and during all of this intervening period up to and including the date of judgment and sentence, the defendant was not of sound mind. In his motion the defendant describes his affliction or condition, at various times, as "paralytic dementia epilepsy," as "schizophrenia psychosis," as "serious mental impairment and deterioration," as "paralytic epileptic dementia,"

as "dementia praecox," and, mildest of all, as "incompetent." The defendant also claims that the "Government through its agency had found the petitioner incompetent before he appeared to answer the indictment." Most remarkable of all in view the record is the defendant's statement that "after a hasty hearing and *without counsel,* the petitioner, on or about November 1, 1941, was received at the United States Penitentiary at McNeil Island, Washington," and "was examined and found incompetent prisoner." [Emphasis supplied.] The suggestion that the defendant was "without counsel" cannot be taken as a serious assertion having factual basis.

For relief the defendant asks that the judgment under which he is imprisoned be declared null and void and that he be discharged from custody; that a "sanity hearing" be had, that the defendant be brought before the court and that the warden of the prison wherein the defendant is now held be required to "show cause upon what authority he deprives the petitioner of his liberty."

In his motion the defendant asserts that "now he is competent." Hence, his request, with such degree of certainty as may be spelled out of his motion, is that the judgment against him be vacated and that a new trial be granted whereat he could and would interpose the defense of his insanity at the time of the commission of the crime charged in the indictment, and, of highest consequence, thereafter until a date subsequent to that of the judgment under which he is imprisoned. The defendant's motion, therefore, is in one aspect a motion for a new trial, Carman v. State, 208 Ind. 297, 196 N.E. 78, 83.

As in the case of Waley v. Johnston, 316 U.S. 101, 104, 62 S.Ct. 964, 965, 86 L. Ed. 1302, the defendant's "allegations in the circumstances of this case may tax credulity." In some features the defendant's allegations as stated in his motion may be based upon the assumption of the complete gullibility of those having power to act. Yet the allegations have been made and they have not been on the record denied.

The attention of the United States Attorney was invited to the motion shortly

after it was filed in this court. In order to assure proper presentation of the subject and full protection of the defendant's rights, the court, in forma pauperis, appointed counsel, a member of the local bar, to represent the defendant. No demurrer, answer, affidavit, or other paper or pleading was presented on behalf of the United States. Arguments were made by counsel for the Government and for the defendant. The United States Attorney stated that as a matter of "humanity" he had made careful inquiry of those who had custody of the defendant at all times after his arrest without finding any support for the defendant's claim of mental incompetency in any respect. Consultation with the able, experienced and humane judge who received the plea and pronounced the sentence gave like result.

■ That a motion for a new trial, as such, may not be now entertained by this court in this case is too well settled to admit of argument, because the term at which the judgment against the defendant was given has long since expired, United States v. Mayer, 235 U.S. 55, 67, 35 S.Ct. 16, 59 L.Ed. 129; Pattison v. United States, 9 Cir., 2 F.2d 14, 15; Gargano v. United States, 9 Cir., 140 F.2d 118, 119, and the judgment was given more than two years prior to the date of filing the motion, Rule 33, Federal Rules of Criminal Procedure, 18 U.S.C.A. following section 687. But is the motion here presented so much an application for a new trial that the provisions of law, whether judge made or statutory, and of rules of court concerning motions for new trials, govern.

■ While proceedings in the nature of coram nobis have not precisely fallen into what the late President Grover Cleveland once in connection with another matter called a "state of innocuous desuetude," the right to apply for a writ coram nobis, or its modern equivalent, has been constricted within an increasingly limited area of circumstance. Sanders v. State, 85 Ind. 318, 44 Am.Rep. 29, 35; Fugitt v. State, 85 Miss. 94, 37 So. 554, 556, 107 Am.St.Rep. 268, 271, 3 Ann.Cas. 326; Pickett's Heirs v. Legerwood, 7 Pet. 144, 32 U.S. 144, 8 L.Ed. 638; see comment Wm. E. Leahy, 5 F.R.D. 262.

■ That coram nobis proceedings, ancient or modern, in the absence of controlling rule, decision or statute, are not ordinarily subject to the limitations of time and term appears to be well settled. Robinson v. Johnston, 9 Cir., 118 F.2d 998, 1000; Linton v. State, 72 Ark. 532, 81 S. W. 608; Dobbs v. State, 63 Kan. 321, 65 P. 658. Despite the casual observation to be found in United States v. Mayer, supra, 235 U.S. at page 67, 35 S.Ct. 16, 59 L.Ed. 129, relative to the application of coram nobis to civil cases, it seems beyond doubt that the proceeding is well established in criminal jurisprudence and may still be availed of in criminal cases. United States v. Plumer, 27 Fed.Cas. page 561, No. 16,056; Howie v. State, 121 Miss. 197, 83 So. 158, 10 A.L.R. 205, distinguishing Fugitt v. State, supra; People v. Reid, 195 Cal. 249, 232 P. 457, 36 A.L.R. 1435; People v. Walton, 10 Cal.App.2d 413, 51 P.2d 1117; Lyons v. Goldstein, 290 N.Y. 19, 47 N.E. 2d 425, 429, 146 A.L.R. 1422; Canizio v. People of State of New York, 327 U.S. 82, 66 S.Ct. 452, 90 L.Ed. 545.

■ But Federal Courts are now working under a new dispensation. The Federal Rules of Criminal Procedure, hereinafter referred to as the Rules, adopted only after exhaustive thought, study and discussion, provide a circumstantial code of procedure for all criminal cases in the Federal Courts. To these Rules, intelligently and reasonably considered, all prior conflicting statutes, rules and decisions must give way. But it must be remembered that not every right, constitutional or otherwise, is mentioned or needs to be mentioned in the Rules.

As heretofore observed, the ultimate aim of the defendant in this case is to secure a new trial. Rule 33 of the Rules provides that "a motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment," but that a motion for a new trial on any other ground shall be made within five days after verdict or finding of guilty, or within such

further time as the court may fix during the five-day period. Obviously, the motion here considered is not based on the ground of "newly discovered evidence," in the ordinary meaning of that term.

Standing alone, without consideration of historical background or judicial decisions reflecting on the question, Rule 33 would appear to constitute no bar to the granting of the relief here sought. But the history of the Rules shows that the first preliminary draft of the rules embraced a provision, Rule 31(c), providing that a motion for a new trial based solely on the ground of newly discovered evidence "may be made at any time before or after final judgment." And the second preliminary draft of the Rules contained, in Rule 35, the following significant paragraph: "A motion for a new trial based on the ground of newly discovered evidence or on the ground that the defendant has been deprived of a constitutional right may be made at any time before or after final judgment, * * *."

It was plainly the thought of the Advisory Committee who prepared the second preliminary draft of the Rules that any person convicted of crime should be permitted to resort to the trial court "at any time before or after final judgment" not only for new trial on ground of newly discovered evidence, but also for the relief, usually eventuating in a new trial, now so frequently asked for in habeas corpus proceedings after expiration of the periods for new trial and for appeal. When the Supreme Court finally adopted the Rules, that body declined to include the provisions of the second preliminary draft above quoted so as to permit motions for new trials to be made without limitation of time, either on ground of newly discovered evidence, or on ground of violation of constitutional rights.

It may be suggested that the rights of one accused of crime to be protected from the hazards of trial while not of sound mind is not a "constitutional right": that the right antedates and transcends the Constitution. Nevertheless, it would seem the better law, sustained by the sounder reason, to hold that the right mentioned, although so ancient in origin and so firmly planted in our concepts of natural justice and settled law as to be virtually indisputable, is one of the rights that falls within the protection of the due process clause of the Fifth Amendment. Under this view, the Supreme Court has now determined not to protect the right by providing relief for its violation through new trial "at any time before or after final judgment." The action so taken by the Supreme Court and the inferences to be drawn therefrom are entirely reasonable in view of all of the circumstances when we consider that relief may be had under other approved procedure, that of habeas corpus.

Whatever doubt might otherwise be entertained on the subject has been resolved by the controlling authority of the Supreme Court and the Circuit Court of Appeals for the Ninth Circuit, in the notable prosecution of Thomas H. Robinson for the crime of kidnapping, and the several trials, appeals and proceedings resulting therefrom. The defendant Robinson successfully challenged his original conviction upon plea of guilty, resulting in a judgment of imprisonment for life, upon the grounds of denial of due process in that (a) he was insane at time of trial and plea and (b) that he was not informed as to his right to counsel and did not waive that right. After all of his constitutional rights had been fully recognized and vindicated he finally received a death sentence, affirmed by the Circuit Court of Appeals and by the Supreme Court of the United States. The cases are listed chronologically: Robinson v. Johnston, 9 Cir., 118 F.2d 998, certiorari denied United States ex rel. Robinson v. Johnston, 314 U.S. 675, 62 S.Ct. 177, 86 L.Ed. 540; rehearing denied 314 U.S. 713, 62 S.Ct. 358, 86 L.Ed. 568; second petition for rehearing granted, certiorari granted, judgment vacated, and cause remanded to C.C.A. for hearing en banc, 316 U.S. 649, 62 S.Ct. 1301, 86 L.Ed. 1732; 9 Cir., 130 F.2d 202; D.C., 50 F.Supp. 774; Robinson v. United States, 6 Cir., 144 F.2d 392, affirmed 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944.

The opinions and decisions given in the Robinson cases are of highest importance

here because they indicate the method by which the defendant in the case now under consideration in this court may have determined the issue which he seeks to present by his motion. For in the Robinson case the averment of insanity at time of trial, as well as the accompanying averment with respect to lack of counsel, was fully urged and relied upon, and Judge Roche held that under the circumstances there disclosed, Robinson v. Johnston, D.C., 50 F.Supp. 774, 776, "the [trial] court was under a duty to determine petitioner's [Robinson's] mental condition before accepting his plea of guilty," and that when "the court, or an officer of the court, has knowledge requiring the exercise of a duty on behalf of the accused, failure to exercise such duty constitutes a denial of due process." It has been suggested that the "knowledge" of the trial court may conceivably not affect the issue. The protective dominion and the regenerative function of due process can scarcely be made to depend upon the accidental circumstance of the factual information or knowledge of the trial judge. The Circuit Court of Appeals for the Ninth Circuit, Robinson v. Johnston, 118 F.2d 998, at page 1001, observed: "It makes no difference on this petition whether or not the [trial] judge knew that the defendant was presently insane at the time he pleaded guilty, because, if that was the fact, the judgment of conviction was void in any event, so that the crucial question here is the fact of insanity, and not the judge's knowledge on the subject." It may be further suggested that lack of knowledge of the trial judge as to constitutional requirements concerning aid of counsel has never prevented the granting of relief—or been inquired into—by the appellate courts when there was failure or denial of due process in that respect. In the Robinson case, D.C., 50 F. Supp. 779, the court also held the judgment invalid because Robinson was not informed as to his right to counsel and that he did not understandingly waive that right. Nevertheless, it appears that the issue of insanity alone was sufficient to justify resort to habeas corpus and relief in that proceeding, 9 Cir., 118 F.2d at page 1000.

Accordingly, I conclude that in formulating the Rules and particularly in rejecting the recommendation of the Advisory Committee for new trial on ground of denial of a constitutional right without limit as to time, the Supreme Court has provided in effect that the failure of the trial court—even failure from lack of factual knowledge—to accord to one accused of crime whatever is legitimately embraced in due process may be remedied through habeas corpus in all cases where relief by new trial or by appeal is not available. The enlargement of the common law scope of habeas corpus by Congress, 28 U.S.C.A. § 451 et seq., and by definition as illustrated in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357, supports this view. The narrow margin now barring still further expansion of relief by habeas corpus may be seen in Gayes v. State of New York, 67 S.Ct. 1711. Even before adoption of the Rules, a motion coram nobis sterile in result did not bar habeas corpus, Waley v. Johnston, supra, 316 U.S. at page 105, 62 S.Ct. 966, 86 L.Ed. 1302, reinforcing the conclusion that by Rule 33, as adopted, the Supreme Court considered habeas corpus alone to afford a channel, indeed, *the* channel, for obtaining relief in all such circumstances as are here presented.

While without bearing on the question of law involved, it may be noted that in the present instance a hearing on a petition for writ of habeas corpus filed in the district court having territorial jurisdiction of the defendant's present place of imprisonment can probably be heard and determined more expeditiously and economically, and with surer protection for the rights of the defendant, than a full hearing in this court on the defendant's motion. Despite the suggestion that the absence of the defendant on such a hearing involves no deprivation of any constitutional right, Carman v. State, supra, 208 Ind. 297, 196 N.E. page 83, it appears that the inherent requirements of a fair trial would demand that the defendant for such a hearing be brought from his prison to the headquarters of this court at Anchorage, Alaska. Putting aside all directions of statute and rule, it may

430

well be asked whether due process can be satisfied with less. Doubtless, it would be necessary to also have present at the hearing several persons who had charge of the defendant when he was imprisoned at McNeil Island, Washington, as well as those who have had him in charge at Springfield, Missouri.

The motion must be denied, but entry of the order will be delayed at the request of defendant's counsel so that, if desired, an appeal in forma pauperis may be seasonably taken.