**UNITED STATES of America,**
**Plaintiff,**

v.

**Thomas H. ROBINSON, Jr.,**
**Defendant.**
**Cr. A. 18917.**

United States District Court
W. D. Kentucky, at Louisville.
July 18, 1956.

J. Leonard Walker, U. S. Atty., Louisville, Ky., Charles M. Allen, Asst. U. S. Atty., Louisville, Ky., for plaintiff.

Thomas H. Robinson, Jr., in pro. per.

SHELBOURNE, Chief Judge.

September 28, 1953, the defendant Thomas H. Robinson, Jr., filed a motion under the provisions of Section 2255 Title 28, U.S.C.A. to have the Court (a) give notice to the United States Attor-

ney of the motion, (b) grant a prompt hearing thereon, (c) issue an order or writ for the production of the defendant at said hearing, (d) order witnesses subpoenaed in his behalf, (e) determine the issues and make findings of fact and conclusions of law with respect thereto, (f) set aside the judgment of conviction and sentence in this case and (g) discharge defendant from further custody or proceedings under the indictment.

At the time of the filing of the petition, the defendant was confined in the United States Penitentiary at Alcatraz, California, under the provisions of a judgment of conviction and sentence rendered by this Court following a trial begun in this Court after arraignment, the actual trial beginning September 28, 1943, under an indictment returned by the Grand Jury of this Court on October 20, 1934.

The indictment charged defendant with the offense of kidnapping under Section 1201(a) of Title 18 U.S.C.A. (Section 408(c) of Title 18 U.S.Code at the time the indictment was returned.)

It was charged that the kidnapped person had not been liberated unharmed, authorizing a verdict by the jury recommending the death sentence. A plea of guilty was originally entered on May 13, 1936 in this Court and the defendant received a sentence of life imprisonment. Subsequently, on August 9, 1943, that judgment of conviction and sentence was held void in a habeas corpus proceeding in the Northern District of California, Southern Division, see Robinson v. Johnston, 50 F.Supp. 774.

Following the trial in this Court in 1943, pursuant to the verdict of the jury so recommending, the defendant was adjudged guilty and sentenced to death.

Defendant prosecuted an appeal to the United States Circuit Court of Appeals for the Sixth Circuit and the judgment was there affirmed. Robinson v. United States, 144 F.2d 392. The defendant petitioned the United States Supreme Court for a writ of certiorari, which was granted and subsequently the judgment of conviction was affirmed. Robinson v. United States, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944.

Subsequently, on June 6, 1945, the sentence of death was commuted to life imprisonment. While under service of that sentence, the defendant has petitioned this Court pursuant to Title 28, U.S.C.A. § 2255.

He filed the appropriate affidavit and was granted the right to proceed upon this motion in forma pauperis, and requested the Court to appoint Counsel to represent him. This Court was of opinion he had no right to appoint Counsel, but did, after correspondence with the defendant, write to a list of Attorneys furnished by the defendant and comunicated to the Attorneys defendant's desire to have representation by some of them. Two Attorneys volunteered to assist the defendant, but subsequently withdrew from the case and another member of the Louisville Bar volunteered to represent the defendant and considerable delay occurred awaiting the filing of a brief. Finally, the defendant asked the Court to submit the case upon his motion and brief, so that presently the case is submitted upon defendant's motion and brief, the brief of the United States Attorney and a reply brief in the form of a letter filed by defendant. The letter requesting the Court to submit the case was written by defendant on April 6, 1956.

Pursuant to his motion for a hearing and his statement that he desired to introduce testimony in support of the allegations of his motion, defendant was brought from prison in Alcatraz, to Louisville and the motion was set for a hearing. At the hearing, defendant and his Counsel stated that no testimony was to be introduced and he was returned to the United States Penitentiary at Atlanta, Georgia, where he is now confined.

It should be stated that the defendant is not unfamiliar with the practice of law, the record showing that he attended Vanderbilt University and finished the course necessary for graduation with the exception of a "few sub-

jects". His brief and motion are well prepared, supported by references to many opinions of the courts invoked as authority for his various contentions.

The first five paragraphs of defendant's motion are devoted to a history of his indictment, conviction, commutation of sentence and efforts to secure the second trial in this Court. The several grounds alleged in his motion begin with numbered paragraph VI and extend through numbered paragraph XIV and this memorandum will refer to his grounds as they are set forth in his motion, beginning with ground VI.

He there alleges that the judgment of conviction and sentence is void because he was denied due process of law and his right against self incrimination, as guaranteed by the Fifth Amendment and the right to a fair and impartial trial, as guaranteed by the Sixth Amendment, because the Judge brought to the attention of the jury defendant's former "involuntary plea of guilty". The reference is to the examination of Mr. Thompson Willett and Preston Joyes. In the course of the examination of Mr. Willett by Mr. Hogan, the former stated, "I think every body presumed until this new thing came up that he (referring to Robinson) was guilty, he was found guilty a number of years ago on charges substantially the same as he is meeting today." The Trial Judge made the statement—"He was not found guilty. He pleaded guilty." Later on, in the course of his effort to ascertain whether Mr. Willett was a competent juror, referring to the case in which the former plea of guilty was entered, Judge Miller said—"That case has been thrown out as not being a valid trial, a valid case. If it is going to take evidence to forget that opinion, in other words, if that's an element that's already in your mind and will be in your mind while you are considering this case, then you should not be a juror in this case. If, on the other hand, you can completely disregard that and say that was a former opinion I had but it plays no part in what the facts are now, it is nothing that I am starting

with, I am starting as an impartial juror with an open mind on it, then the situation is different." Subsequently, the Court, sua sponte, excused Mr. Willett as a juror.

With respect to the prospective juror Joyes, he was also being examined by Mr. Hogan and said "my opinion was probably the same as 99% of the people, a guilty plea was made and I just assumed that he was guilty", but he further said "I am frank to say that I have no opinion now." When Mr. Hogan, defendant's Counsel, challenged Mr. Joyes, the Court sustained the motion and excused him. Neither Mr. Willett nor Mr. Joyes was accepted as a juror. Moreover, there was no suggestion that their statements, in response to Mr. Hogan's interrogation, prejudiced the case or the minds of the jurors who were accepted. No point was made of the occurrence on the appeal.

■ This Court finds as a fact that neither the statements of the jurors nor the actions or statements of the Court constituted error or in any wise interfered with the defendant's having a fair trial before an impartial jury.

■ As a matter of law, the Court holds that if an error occurred in this manner, it could not constitute grounds for vacating a judgment of conviction under Section 2255 of the Code. Davilman v. United States, 6 Cir., 180 F.2d 284; Sunal v. United States, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982; Hill v. United States, 6 Cir., 223 F.2d 699 and Hudspeth v. United States, 6 Cir., 183 F.2d 68.

Ground VII of the motion involves an examination by court-appointed psychiatrists and admission at the trial in evidence of the report of the psychiatrists.

The principal defense of defendant on his plea of not guilty was that at the time of the alleged kidnapping he was insane and therefore, incapable of being responsible for his acts, even though proven to have been committed, as alleged in the indictment.

The record shows that prior to the time of the alleged commission of the offense, the defendant had been adjudged a person of unsound mind and committed to an insane institution in the State of Tennessee, pursuant to valid adjudications by the Courts of that State.

In the case of Robinson v. Johnston, D.C., 50 F.Supp. 774, defendant's claim that he was insane was urged as one of the grounds in support of his contention that his first trial in this Court, after being apprehended, was a nullity.

The record of his trial in this Court in 1943 shows that Judge Miller, prior to the acceptance of defendant's plea, sought first to ascertain whether at that time, the defendant was sane.

This was for the very obvious reason that an adjudication of insanity raised a continuing presumption of mental incapacity. This examination was therefore necessary to determine whether the defendant was mentally capable of understanding the proceedings against him and rationally advising with his Counsel as to his defense.

. In Youtsey v. United States, 6 Cir., 97 F. 937, it was said that an insane person could not enter a plea to an arraignment, be subjected to trial or after trial, receive judgment. See also the case of McIntosh v. United States, 6 Cir., 175 F.2d 95. This case involved a plea of insanity before the enactment of Section 4244 of Title 18 U.S.C.A. It is upon this statute that the defendant relies in his motion now under consideration. He says in his brief "At the time of defendant's trial in 1943, there was no statute covering the procedure for determining the present mental status of a prisoner claiming insanity at the time of the offense, and the case law was in a very unsettled state."

Section 4244 of Title 18 U.S.C.A. is as follows:

"Mental incompetency after arrest and before trial. * * * A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury."

And "this", says the defendant, "is a new constitutional ground. It was not urged or decided on appeal. It is based on a change and clarification of the law".

It had been shown in the evidence that the defendant had been judicially declared of unsound mind, prior to the time of the alleged commission of the offense charged in the indictment. With the legal presumption that the insanity would continue until a judgment of restoration, the Trial Court sought properly to ascertain from the psychiatrist what the mental condition of the defendant was at the time he was presented for trial. There was no Statute such as 4244 of Title 18 U.S.C.A., forbidding the introduction of evidence resulting from an examination had by the Court prior to 1949 and it will be noted that the section relied upon by defendant relates to "Mental incompetency after arrest and before trial".

If the admission of the testimony of the psychiatrists under the direction of the Court was error, it was error only in the admission of evidence and one neither mentioned nor complained of on the appeal in this case. It cannot be now raised as an invasion of defendant's constitutional rights under the provisions of Title 28 U.S.C.A. § 2255.

The VIII ground urged by the defendant in his motion is (1) that the requirement of a unanimous verdict was abridged and destroyed; (2) that the Court failed to instruct on the constitutional requirement of unanimity as to both guilt and recommendation as to punishment, (3) that the Court misled the jury by failing to instruct as to the effect of disagreement on either of the two elements of punishment, (4) the jury in deciding to recommend the death penalty was influenced and induced by the instruction that if they did recom-

mend the death penalty, the Court had an option to impose the death penalty or not, (5) that the jury was urged to recommend death so as not to tie the hands of the Court in what the Court might feel should be done. It nowhere appears in the instructions that the Court said to the jury in words, substance or meaning that any verdict which they might return could be other than the result of a unanimous agreement. It further does nowhere appear that the jury could have inferred from the instructions that the recommendation of the death penalty could be other than by the unanimous agreement of all twelve jurors.

Judge Miller's instructions in this regard measure up to the requirements set forth by the Supreme Court in the case of Andres v. United States, 333 U.S. 740, 68 S.Ct. 880, 92 L.Ed. 1055.

█ The record in this case further shows that there was unanimity because when the jury returned into Court with its verdict, and after the verdict had been read by the Foreman, on motion of defendant's Counsel, the jury was polled and each member was asked whether the verdict as read by the Foreman was the verdict of that individual juror. Hence, the record in this case abundantly shows there was unanimity both as to guilt and as to the recommendation embodied in the verdict.

█ Ground IX of the motion alleges that the prosecution knowingly and intentionally used false and perjured testimony to obtain the verdict. It was alleged that an affidavit filed by Mrs. Stoll in opposition to defendant's plea in abatement, falsely stated that as the result of a blow on her head which she received from the defendant, her hearing had become permanently impaired. This testimony was not given by Mrs. Stoll on the trial of defendant before the jury.

It is further contended that Mrs. Stoll testified on the trial that defendant struck her on the head with a pipe causing blood to flow freely, inflicting a wound which was still bleeding late on the night of the kidnapping. He says,

and he is supported by the record, that Mrs. Stoll testified on cross examination that the blow on her head fractured her skull and that failure of Dr. Frazier, who attended her after her release, to show a fracture by the X-ray examination, indicates perjury.

These contentions are not supported by the evidence introduced upon this motion. There is a dearth of evidence in the record of defendant's trial in this Court indicating that the testimony given by Mrs. Stoll, complained of in the motion, was false, and certainly there is no evidence that the prosecution had any grounds to believe that any of the testimony given was false. Certain testimony given by Berry V. Stoll, husband of Alice Stoll, of Ann Woolet, the maid and Claude Hudgins, Assistant United States Attorney, at the time defendant was apprehended is assailed as false, but most of the allegations in his brief to support his motion on the contention of falsity are de hors this record, and this Court cannot accept such statements in impeachment of the record.

Ground X is similar to that of Ground IX, in that it is contended that his conviction was obtained by the knowing and intentional use of fraud by the Court. The allegations of the motion and of the brief in support of Ground IX are reiterated as supporting Ground X.

In the latter ground, petitioner charges the Court with knowingly and intentionally aiding the prosecution in the use of prejudiced testimony, but says in his motion that this ground raises issues of fact and that some of the supporting facts appear in the record and that others are outside, but are not inconsistent therewith. The gravaman of this Charge as to the Court is that the Judge actively aided the prosecution, overruled objections of the defense and harassed defense Counsel; that he took an active part in questioning witnesses, but did not once question any of the witnesses who were alleged by the defendant to have given perjured testimony.

█ All of these allegations relate to the admission and rejection of testi-

**292**

mony and are not grounds that may be urged in a motion under 2255.

Ground XI claims a denial of due process under the Fifth Amendment because wide and pre-trial publicity had engendered a hostile atmosphere and a public presumption of defendant's guilt and that the pre-trial publicity was circulated through the media of newspapers, magazines and radio in the Louisville area, particularly by a Sunday Edition of the Courier Journal, in the rotogravure section, which was devoted to an inflammatory and highly prejudicial story of this case.

Petitioner alleges that he exhausted all of his peremptory challenges and still was compelled to accept a jury many of whom admitted having read the alleged newspaper accounts and he was thereby given a biased jury. His motion very candidly states however, that he "could not have obtained a trial free of public prejudice by transfer of the case to another district and therefore he stands no worse for his failure to apply for a change of venue".

■ This ground is without merit, because it could have been fully reviewed on appeal. It is not appropriate to be considered on a motion under 2255.

Ground XII is a general contention that defendant was denied a fair and impartial trial, and due process of law, as contemplated by the Fifth and Sixth Amendments, for the reasons stated in Grounds VI through XI, considered collectively; that improper conduct on the part of the prosecution; the biased attitude on the part of the Court; the record as a whole, as well as "facts dehors the record disclose a violation of the constitutional safeguards which are embodied in the standard concept of a fair and impartial trial and due process of law." In support of this contention, petitioner relies upon Sunderland v. United States, 8 Cir., 19 F.2d 202, 216; Baker v. Hudspeth, 10 Cir., 129 F.2d 779; Pierce v. United States, 6 Cir., 86 F.2d 949 and Pharr v. United States, 6 Cir., 48 F.2d 767, and others.

■ In all of these cases, a reviewing court has found failure to observe constitutional safeguards reflected by an examination of the proceedings at the trial and have concluded that the proceedings were so grossly lacking in elements of fairness and justice as resulted in depriving the defendant of due process. Compared to those, we think the case at bar presents a careful effort to observe constitutional safeguards and to give the defendant the kind of trial contemplated by constitutional provisions.

■ Ground XIII is defendant's contention that he was denied a speedy trial, as guaranteed by the Sixth Amendment because there was a lapse of seven years between his arrest, his arraignment and trial. This contention, of course, rests upon the theory that the arraignment, plea, judgment of conviction and sentence had in this Court following his apprehension have been adjudged void and that he seasonably filed a motion to dismiss the indictment on the ground that his right to a speedy trial had been violated.

This ground, too, should have been presented on appeal and was presented in a contention that he had been twice placed in jeopardy, in contravention of the Fifth Amendment. The Court disallowed that contention, assigning as one of the reasons that the original judgment and sentence were declared void at the insistence of defendant and that therefore he may not avoid that judgment and later introduce it as a hindrance to the further administration of justice. Were the law as contended by the defendant, a lapse of time after a trial involving a serious error, would absolve the defendant from liability and that is what the defendant here contends. The proper place to have made that contention was upon the appeal.

Ground XIV assails the right of the California Court, who tried the habeas corpus proceedings, after holding that the trial in 1934 in this Court was a nullity, to remand defendant back to this Court for the new trial or for further proceedings.

Judge Roche concluded his opinion on the habeas corpus proceeding instituted by Robinson in the District Court for the Northern District of California in 1943, by ordering the defendant returned to this Court within ninety days from the entry of the judgment in the California Court, and directed the Marshal for the Northern District at California to remove and remand petitioner to this Court for further proceedings. The reason underlying his judgment nullifying petitioner's original conviction in this Court, as stated supra, was that petitioner had been adjudged by the Courts of Tennessee to be insane and the fact that the law presumed that the insane condition continued. He held that the petitioner had not had the assistance of Counsel, as guaranteed by the Federal Constitution; that his trial therefore in 1934 in this Court was a nullity. This holding, however, recognized that this Court had jurisdiction of the offense and of the person of the defendant and therefore remanded defendant back to this Court for a valid trial.

■■■ This disposition of the habeas corpus case in California was in conformity with the concluding paragraph of Section 2243 of Title 28 U.S.C.A., directing that the habeas corpus Court, after hearing and determining the facts, should dispose of the matter "as law and justice require."

In In re Bonner, 151 U.S. 242, 14 S.Ct. 323, 327, 38 L.Ed. 149, the Supreme Court said—

> "It would seem that in the interest of justice, and to prevent its defeat, this court might well delay the discharge of the petitioner for such reasonable time as may be necessary to have him taken before the court where the judgment was rendered, that the defects, for want of jurisdiction, which are the subject of complaint, in that judgment, may be corrected."

In the subsequent case of Bryant v. United States, 8 Cir., 214 F. 51, the holding in the Bonner case was followed. Subsequently, when the matter came before the Sixth Circuit in the case of Wilson v. Bell, 137 F.2d 716, both the Bonner and Bryant cases were cited as authority for a return to the Court having original jurisdiction of a petitioner in habeas corpus proceedings in an extensive opinion by Judge Martin. Referring also to the case of Price v. Zerbst, D.C., 268 F. 72, our Court of Appeals held that if a Court imposes a void sentence, it does not lose jurisdiction to impose a proper sentence at a later time, particularly where the question is raised at the instance of the defendant on whom such sentence had been passed.

Hence, it is held that this Court had jurisdiction both of the offense charged in the indictment and of the defendant in 1943 when appearing before this Court for trial.

It should be borne in mind that the petitioner Robinson had the benefit of Counsel when he was returned to this Court for a hearing on his petition under Section 2255, at which time he declined to introduce any evidence in support of the allegations of his motion, which opportunity he had sought in his petition. This Court rendered such assistance to petitioner to secure Counsel as it felt the limitations of law permitted.

In the case of Crowe v. United States, 4 Cir., 175 F.2d 799, 801, it is stated:

> "So far as appointment of counsel is concerned, the requirement of the Constitution is that the prisoner have counsel upon his trial, not when he subsequently makes a motion attacking the judgment there entered."

The same holding is announced in the case of United States v. Caufield, 7 Cir., 207 F.2d 278. This is for the reason that the Supreme Court in the Hayman case, Hayman v. U. S., 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, held that actions, instituted under Section 2255 of Title 28 are proceedings independent of the trial.

294

In a collateral attack upon a judgment, especially one affirmed on appeal, the movant "undertakes a severe burden." Bishop v. United States, 96 U.S.App.D.C. 117, 223 F.2d 582. In such a proceeding, where an allegation that perjured testimony was employed, a defendant must not only show the use of perjured testimony, but use with knowledge of the perjury. United States v. Rutkin, 3 Cir., 212 F.2d 641; United States v. Spadafora, 7 Cir., 200 F.2d 140.

A motion under Section 2255 of Title 28 cannot be substituted for an appeal, even if the errors complained of relate to constitutional rights. United States v. Rosenberg, 2 Cir., 200 F.2d 666; Davis v. United States, 7 Cir., 214 F.2d 594.

In such a proceeding, questions which could have been raised on appeal are of no avail. Klein v. United States, 7 Cir., 204 F.2d 513.

The record in this case on the trial in 1943 presents an outstanding example of the zeal and fidelity which appointed Counsel manifests when called upon by a Court to discharge a duty which all members of the Bar owe to their profession. Robert Hogan's defense of the defendant reflects an earnest and industrious effort to throw about the defendant every safeguard which the Constitution and law guarantee to a person charged with a criminal offense. The record likewise reflects patience and diligence on the part of the Court to secure for defendant a fair and impartial trial.

The opinion of the Circuit Court of Appeals for the Sixth Circuit reflects a careful examination of the many errors complained of and the opinion of the Supreme Court, granting certiorari and in reviewing proceedings cannot but indicate that had there been merit in the contentions now made by the defendant, the Supreme Court would have corrected them when the case was before that Court.

The motion of the petitioner is denied and an order to that effect will be entered this day.