**UNITED STATES of America,
Plaintiff,**

v.

**Kenneth C. CORNETT, Defendant.
Civ. No. 3092.**

United States District Court
W. D. Kentucky, at Louisville.
July 25, 1956.

J. Leonard Walker, U. S. Atty., Louisville, Ky., Harold M. Streets, Asst. U. S. Atty., Louisville, Ky., for plaintiff.

Rodes K. Myers, Bowling Green, Ky., for defendant.

SHELBOURNE, Chief Judge.

November 9, 1953, defendant Kenneth C. Cornett was charged in one count of an indictment with murder in the first degree and in the second count of the indictment with murder in the second degree, in violation of Section 1111 of Title 18 U.S.C.A.

The first count charged that the murder of Darrell E. Norris by the defendant Cornett was with premeditation and from the second count the phrase "with premeditation" was omitted.

March 30, 1954, defendant was placed on trial, being represented at that time by Mr. Walter B. Smith, Attorney of Louisville, Kentucky, employed by the defendant and when the case was called, both sides announced ready.

On April 1, 1954, the jury returned its verdict, finding defendant Cornett guilty of murder in the first degree as charged in count one of the indictment and qualified its verdict by adding thereto "without capital punishment".

Defendant was sentenced, as provided in Section 1111 to imprisonment for life. No motion for a new trial was filed by his counsel and no appeal was prosecuted.

On January 17, 1956, the defendant, represented by counsel Mr. Rodes K. Myers (who was not defendant's counsel at the time of the trial) filed a motion to vacate and set aside the conviction of

defendant under the provisions of Title 28 U.S.C.A. § 2255, and as reasons and grounds in support of his motion alleges—

I. That the Court failed to clearly inform the jury that intoxication may negative the ability of the defendant to form a specific intent to kill or to deliberate or to have the premeditation necessary to constitute first degree murder, in which event the crime is murder in the second degree.

II. That the Court did not instruct on Voluntary Manslaughter nor inform the jury that if they believed the defendant committed the act in sudden heat and passion, from provocation calculated to cause an ordinarily reasonable man to shoot and kill deceased, the jury should have been instructed to find defendant guilty of volnntary manslaughter, an offense included in the charge of murder.

III. That the jury was not instructed that if they believed defendant guilty of culpable homicide, but if they had a reasonable doubt as to whether he was guilty of first degree murder or second degree murder, they should find him guilty of murder in the second degree.

IV. That the jury was not kept together at the noon recess on March 31, or on the night of March 31, during the progress of the trial.

These grounds will be discussed in the reverse order of their statement.

Ground IV. Defendant's counsel has filed with his motion a partial transcript of the proceedings had at the trial. That transcript does not contain the voir dire examination of the jurors and does not contain a statement made to the jury on the afternoon of March 30, when they were permitted to disperse.

The Court has obtained from the Official Reporter a transcript of the statement made after the voir dire examination had been completed, which the Clerk's trial order shows to have been at six P. M. on March 30, 1954.

The Court stated to the twelve jurors before they had been sworn and hence before they became the jury in this case the following—

"By the Court: Ladies and Gentlemen, in this kind of a case, the law requires you be kept together, and if I would swear you tonight, it would mean you would have to remain in the custody of the Marshal. By postponing swearing you until tomorrow morning when we convene Court, I can permit you to go home. I do so with full confidence in your ability and integrity and I say these things not in any doubt about that integrity, but in order that some of you who may be serving your first time on a jury may know what is required of you. After you are sworn, you will have to be in the custody of the Marshal continuously until this case is finally disposed of. So, tonight and before you come tomorrow at nine o'clock to be sworn and try this case, you make arrangements with your affairs so you will not have to return to them until we conclude the trial of this case, which I hope very much we can do tomorrow, but which is doubtful, and you will have to remain in the custody of the Marshal overnight tomorrow night in the event it is not concluded and remain with him until it is finally concluded. That doesn't mean you can't communicate with your business house and your home, but you will have to do so in the presence of the Marshal. You will not be permitted to separate at all after you are sworn. Defendant's Counsel says he has no objection to you being permitted to go home tonight—that's true, isn't it?

"Mr. Smith: That's correct, your Honor.

"By the Court: Certainly there is no impropriety in that. Don't talk about the case. If anybody says anything to you about—are you a member of that jury down there, just refuse to talk to them. That seems a little rude, but you can ex-

plain it to them afterward. Don't talk to anybody about this case. If anybody undertakes to mention it to you, just don't converse with them at all. They may get a little mad until they understand, but when they do understand, they will fully understand. We will convene at nine o'clock, and I hope the Attorneys will be prepared to present the case to you and the evidence as orderly and speedily as proper presentation will permit. You may go now until nine o'clock."

In the Clerk's trial order, it appears that the Court convened on March 31 at nine o'clock A. M. and that Harold Hall, Chief Deputy Marshal, Mrs. Bernadine Kearney and John O. Morton, Deputy Marshals were sworn by the Court to take charge of the jury, as provided by law.

Counsel does not now say that the jury was allowed to disperse or separate, but says that the record does not show affirmatively that they were kept together at the noon recess on March 31 or on the night of March 31, after the adjournment of Court.

The simple answer to Counsel's contention is that they were not permitted to separate after they were sworn. They were kept together and in custody of the Chief Deputy Marshal and two Deputy Marshals.

■ Whether this would constitute such a violation of the defendant's constitutional rights had the jury been permitted to separate, need not be considered. Hence ground VI of the motion is without merit.

■ Ground III. Ground III is equally without merit, because the instructions advised the jury that the difference in the first and second counts in the indictment was that in the first count it was alleged that the deceased was murdered by defendant by "premeditated killing" and that that phrase was omitted from the second count.

The Court advised the jury that murder is the unlawful killing of a human

being with malice aforethought and that the phrase "malice aforethought" as used in the indictment meant a predetermination to commit the act of killing a human being without legal excuse and that it was immaterial at what time before the actual killing that determination was formed.

The jury was further told that murder perpetrated by a premeditated killing, as used in count 1 of the indictment, meant killing of a human being with malice aforethought following the formation of a specific intent to kill, although the formation of a design to kill may be instantaneous.

The jury was further told that mental processes of deliberating upon a design does not require that an appreciable time elapse between the formation of the design and the act, within which time there is in fact deliberation.

Defendant's trial counsel apparently felt that the instructions covered the case, because, as disclosed by the transcript, at the conclusion of the giving of the instructions, the Court inquired of defendant's counsel if he had any exceptions to the instructions, to which he replied "no exceptions."

■ Ground II. Ground II relied upon in the motion is that the Court did not instruct on Voluntary Manslaughter, that is that if defendant committed the act in sudden heat and passion, from provocation calculated to cause an ordinarily reasonable man to shoot and kill the deceased, the jury should have found him guilty under Section 1112 of Title 18, voluntary manslaughter being there defined as the unlawful killing of a human being without malice upon a sudden quarrel or heat of passion.

The record in this case shows that the defendant and the deceased Norris were soldiers at Fort Knox and that following the defendant's quitting work about 4:30 on the afternoon preceding the killing during that night, defendant and deceased with other soldiers were drinking and had quarreled and fussed and that Norris slapped the defendant, kicked him

and used abusive and insulting language to him and according to the undisputed evidence, made threats to do him violence. The record is equally clear from defendant's own testimony, that after hostilities had subsided, defendant engaged two soldiers who had an automobile to take him to some three miles off the Reservation to the trailer in which lived Sergeant McCormack under whom the defendant was working and that at the trailer camp defendant told McCormack that he desired to go squirrel hunting the following morning and wanted to borrow a shot gun. McCormack gave him the gun and told him that some shells for the gun were in McCormack's car parked near the trailer; that defendant went to the car and searched for the shells and then came back and McCormack gave him shells from the trailer door and that he returned to the barracks at Fort Knox. He went to a small room upstairs and found Norris alone in the room, asleep. He turned on the light identifying Norris and when the latter opened his eyes, defendant shot him. When asked why he borrowed the gun, he testified as follows—

"Q. What did you tell him (McCormack) you wanted it for? (McCormack's gun) A. I told him I wanted to go squirrel hunting.

"Q. Did you want to go squirrel hunting? A. No, sir, I didn't.

"Q. What did you want with that gun? A. Well, I was going to do what I did.

"Q. You were going to go back there to that barracks and shoot Norris, weren't you? A. I didn't know where he was at.

"Q. You went just as straight back to his barracks as you could? A. I didn't know he was in the barracks, sir.

"Q. You knew then that you were going to go back looking for him, didn't you? A. Well, sir, he told me he was going to kill me.

"Q. I am asking you if you didn't know right then you were going to go back looking for Norris to kill him? A. Sir, I don't know what I was going to do."

No instructions on Voluntary Manslaughter were requested by defendant's counsel and the Court thought the facts of the case did not justify an instruction on voluntary manslaughter.

Ground I. The first ground relied on in the motion is that the Court failed to clearly inform the jury that intoxication may negative the ability of the defendant to form a specific intent to kill or to deliberate or premeditate such as is necessary to constitute first degree murder.

Actually, the basis of movant counsel's ground for criticism is that the Court stated to the jury that defendant's counsel had stated in his argument to the jury that the Court would tell the jury that in order to be guilty the defendant "had to be in possession of all of his faculties and his best thinking."

The Court told the jury that such a statement would not be made by the Court, but that the Court felt sure that the killing of Norris was defendant's worst thinking.

Further on in defendant counsel's argument, he had stated to the jury that the defendant did not know what he was doing and the Court stated that no defense was interposed that defendant was devoid of sufficient mentality to know what he was doing.

The instructions with respect to intoxication advised the jury that intoxication or drunkenness while no excuse for crime, yet should be considered by the jury because of the necessity that they determine the degree of the crime by inquiring into the state of mind upon which the defendant acted. The Court said: "The degree of the offense depends upon the question of whether the killing was with malice aforethought and with premeditation, and upon that question it is for the jury to consider evidence of intoxication, if there be such, not whether the ground of drunkenness rendered the criminal act less criminal, but upon the ground

that the condition of the defendant's mind at the time the act was committed must be inquired into in order to justly determine whether his mind was capable of premeditation, which determined the degree of the crime."

Counsel does not challenge this as a true statement of the law as to intoxication, as it applies to this case, but contends that this instruction was nullified by the previous statement of the Court that defense counsel's statement that the jury would be instructed that they would have to find from the evidence that defendant was in possession of all his faculties and acted according to his best thinking was not the law applicable in this case. That the Court's statement amounts to a peremptory instruction to find the defendant guilty.

The United States Attorney, in his brief, has cited many cases to support his contention that the law applicable upon considering this motion is that errors of law which could be corrected upon an appeal can not serve as a basis of attacking the judgment of conviction under Section 2255 of Title 28 and that a motion under that Section can not ordinarily be used in lieu of an appeal to correct errors committed in the course of a trial, even though such errors relate to constitutional rights. Among these cases are: Davilman v. United States, 6 Cir., 180 F.2d 284; Johnson v. United States, 5 Cir., 213 F.2d 492; Parker v. United States, 4 Cir., 184 F.2d 488; Barnes v. Hunter, 10 Cir., 188 F.2d 86, and Taylor v. United States, 4 Cir., 177 F.2d 194.

However, in the recent case of Hill v. United States, 6 Cir., 223 F.2d 699, 701, recognition is given to the rule in exceptional cases that a defendant may be deprived of his constitutional rights under such circumstances as justify a review of the proceedings in a collateral attack in the nature of a motion under 2255. The Court cited the cases of Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 and Bowen v. Johnson, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455.

The Court of Appeals for the Eighth Circuit in Burns v. United States, 229 F.2d 87, 89, though holding that the contention of the defendant there that the indictment failed to charge an offense and that the District Court erred in holding that appellant could not litigate a motion to vacate the judgment and sentence on account of the invalidity of the indictment and that the evidence was insufficient to sustain a verdict notwithstanding the indictment being void on its face and other errors appearing in the record of the trial, raised only questions which could properly have been raised on appeal and that the motion under Section 2255 of Title 28 U.S.C.A. "cannot be made to serve the purpose of an appeal". Yet the Court "searched the record" to determine that the defendant had had a fair trial.

The Court of Appeals of the Sixth Circuit made the same careful examination in the case of Hill v. United States, supra.

The Supreme Court in the case of Sunal v. Large, 332 U.S. 174, 182, 67 S.Ct. 1588, 1592, 91 L.Ed. 1982, said—

"It is not uncommon after a trial is ended and the time for appeal has passed to discover that a shift in the law or the impact of a new decision has given increased relevance to a point made at the trial but not pursued on appeal. Cf. Warring v. Colpoys, supra [74 App.D.C. 303, 122 F.2d 642, 136 A.L.R. 1025]. If in such circumstances, habeas corpus could be used to correct the error, the writ would become a delayed motion for a new trial, renewed from time to time as the legal climate changed. Error which was not deemed sufficiently adequate to warrant an appeal would acquire new implications. Every error is potentially reversible error; and many rulings of the trial court spell the difference between conviction and acquittal. If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by habeas corpus, litigation in these criminal cases will be interminable. Wise judicial administration of the

federal courts counsels against such course, at least where the error does not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court."

The defendant in this case, represented by competent counsel of his own selection and employment, accepted the judgment of conviction and did not prosecute an appeal. Hence, the doctrine of the Sunal case is applicable, that is, Section 2255 of Title 28 can not be the means of affording a substitute for an appeal.

Accordingly, the motion will be overruled and an order to that effect is this day entered.