Lewis Woodard LARSON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17942.

United States Court of Appeals Fifth Circuit.

Feb. 29, 1960.

Lewis W. Larson, in pro. per.

E. Ralph Ivey, Asst. U. S. Atty., Charles D. Read, Jr., U. S. Atty., Atlanta, Ga., for appellee.

Before TUTTLE, CAMERON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

■ The question for decision is whether, in the circumstances of this case, a collateral attack on an unappealed judgment of conviction may be made under Section 2255, Title 28. The prisoner gives no reason for failing to appeal and it appears that his failure to appeal, his decision not to move for a change of venue, and his withdrawal of a motion for a new trial were all part of considered strategy not to jeopardize his life by running the risk of a new trial. We hold that the prisoner may not now substitute a proceeding under Section 2255 for the orderly appellate process he deliberately declined to use six years ago when the errors, if they were errors were as obvious as they are today.

On August 25, 1953, Lewis Woodard Larson, appellant, and Herbert Eugene Juelich were indicted for the murder of a Deputy United States Marshal.[1] There was considerable prejudicial publicity before and during the trial.[2] Juelich moved for a change of venue; Larson did not. The motion was denied. The case was called for trial on November 24, 1953, and from November 24, 1953 to December 2, 1953, the court heard motions and each juror on the panel was questioned at length on voir dire. The record of the trial, as this Court observed in Juelich v. United States, 5 Cir., 1954, 214 F.2d 950, shows that each member of the trial jury empanelled expressed the opinion that Larson or Juelich, or both, were guilty. Each member of the jury stated also that he would base his verdict on the testimony, regardless of his opinion. The jury returned a verdict of guilty against Larson, with recommendations against capital punishment. The verdict against Juelich was guilty, with no recommendation against capital punishment; he was the one who pulled the trigger. Juelich was sentenced to death. He appealed. Larson received a life sentence. He did not appeal.

This Court reversed the conviction of Juelich. We held: "We are of the opinion that on the clear showing here made the trial court should either have sustained defendant's motion to change the venue of the case, or should have granted a continuance for such period of time as might be necessary to insure that a fair and impartial jury could be obtained. We are further of the opinion that the trial court committed reversible error in forcing defendant to trial before a jury, every man thereon having entered the jury box with the opinion that the defendant was guilty." Juelich v. United States, 5 Cir., 1954, 214 F.2d 950, 956.

1. On August 8, 1953, Larson and Herbert Eugene Juelich were being transported by automobile to the Federal Penitentiary at Atlanta, Georgia, to serve five years imprisonment. Vaughn and Hightower, two Deputy United States Marshals, were in the front seat. The two prisoners, handcuffed and shackled, were on the back seat. Juelich managed to remove his handcuffs. He reached over and grabbed Vaughn's gun. The four men scuffled until the car came to a stop. Vaughn reached for the door handle. Three shots sounded and Vaughn fell out of the car. The two convicts disarmed Hightower and made him a prisoner. They took to the woods, not far from Rome, Georgia. An alarm was soon sounded. Road-blocks were set. Bloodhounds were put upon the trail. A unit of the Georgia National Guard, members of FBI, the state police, and armed citizens took up the hunt, aided by airplanes. Newspapers and broadcasts carried lurid accounts of the murder and the public was kept constantly informed as to the progress of the manhunt. The countryside was combed and finally, after four days, the convicts were found by members of the Georgia National Guard. Every member of the jury stated that he had an opinion as to the guilt of one or both defendants. Each juror also stated that he would yield his opinion to testimony and base his verdict on the evidence.

2. See Note 1.

The trial judge, in his opinion on Larson's motion under Section 2255, observed that Larson was represented at his original trial by two "able and outstanding attorneys, who, together with movant, appeared entirely satisfied with the verdict of guilty with recommendations of mercy". One of the attorneys, James Maddox, well-known at the Georgia bar, was a former Judge of the Superior Court of the Rome, Georgia, Judicial Circuit. These attorneys filed a motion for severance and a motion to dismiss. The district court denied both motions. November 30, 1953, Larson's counsel moved for a continuance. After selection of the jury, December 2, 1953 this motion was renewed. The motion was denied. The same day Larson's counsel moved that all jurors be disqualified. This motion too was denied. December 8, 1953, Larson moved that the verdict be set aside and that he be granted a judgment of acquittal and, in the alternative, that he be granted a new trial. The only ground alleged for a new trial was that there was no evidence submitted to justify the jury's verdict of guilty of the offense of murder in the first degree. The motion for judgment of acquittal was denied. Then, December 11, 1953, Larson withdrew his motion for a new trial.

Juelich was later retried, convicted, and sentenced to a life sentence. The risk of a death sentence therefore, to which Larson would have been exposed if he had appealed with Juelich in 1953 and had been retried, has been reduced almost to zero. Now, Larson brings this action under Section 2255 and appeals from the order of the district court denying his motion.

In a carefully considered opinion, the trial judge stated: "It is significant that at the time of his trial movant and his counsel did not pursue, or file, various motions which were filed in behalf of Juelich. The strategy pursued was this, to allow Juelich if possible, to obtain a change of venue, which would have given to Larson a severance, so that he would be tried alone in the Rome Division of the United States District Court, either before or after Juelich was tried in another jurisdiction. A careful study of the various complaints made by movant will show that no opportunity was given to the trial judge to rule upon the questions now raised when the case was tried, for the reason that movant did not then ask for the same. He could not have been given a change of venue without his own motion, nor could the court have tried his case without a jury unless movant waived a jury, which he did not do. * * * Failure of able counsel for movant to make the above motions (now made under § 2255) [3] at the time of trial was not through inadvertence, nor to oversight or neglect. Neither was there failure to file an appeal due to oversight or neglect. It was done with the full consciousness of the facts in the record. * * * Movant and his able counsel all felt that his conviction should not be appealed, and that he should not again be put in jeopardy, even in another jurisdiction. The facts in the record would seem to justify the decision by movant and his counsel to accept the life sentence and not stand trial again."

3. The trial judge states the grounds of the motion as follows: "1—That the panels of jurors placed upon movant were not impartial jurors. Movant, however, did not move for a change of venue on this ground as did Juelich, and this ground will be discussed below. 2—This ground complains of the court's failure to grant a change of venue, but no motion was made to that effect and the court could not have granted the same. 3— Movant contends that the foregoing steps not having been taken by the court, mov-

ant should have been given a trial by a judge without a jury. The court could not have done that unless movant offered to waive the jury, which he did not do. 4— Movant alleges the court erred in denying his challenge to the entire panel of jurors, but he made no such challenge. 5—Movant alleges the court erred in refusing to continue the case, but he made no such motion. 6—Movant alleges the court erred in denying his challenge to the poll of jurors, but he made no such demand at the time of trial."

■■ A motion under Section 2255[4] is a post-conviction proceeding to enable a federal prisoner to attack the validity of a sentence, if the sentence is "in violation of the Constitution or laws of the United States". But the constitutional ground must be "such a denial or in-fringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." A collateral attack may be sustained only upon grounds which would warrant granting a writ of habeas corpus.[5]

4. The first three paragraphs of Section 2255 provide: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. ¶ A motion for such relief may be made at any time. ¶ Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." Section 2255, Title 28.

5. Chief Justice Vinson, reviewing the legislative history of Section 2255 in United States v. Hayman, 1952, 342 U.S. 205, 214–229, 72 S.Ct. 263, 271, 96 L.Ed. 232, stated that the Judicial Conference Committee on Habeas Corpus Procedure, that sponsored the legislation, intended Section 2255 to be "in the nature of, but much broader than, coram nobis", and "as a remedy, it is intended to be as broad as habeas corpus". The section was devised to meet practical difficulties in the administration of habeas corpus by federal prisoners by providing a more convenient forum. Although the grounds for substantive relief under Section 2255 are substantially the same as under habeas corpus, Section 2255 differs from habeas corpus in at least two important procedural respects: (1) The motion under Section 2255 must be brought in the sentencing court, rather than in the court in the jurisdiction of detention; partly because trial records are available in the sentencing court but mainly for administrative reasons, to relieve the overburdened district courts in whose jurisdiction federal prisons are located. (2) Under Section 2255 the court at its discretion may hold hearings without the prisoner. See Reviser's Notes to 28 U.S.C.A. § 2255; Judge Holtzoff's discussion of the history of habeas corpus and Section 2255 motions in United States v. Edwards, D.C. D.C.1957, 152 F.Supp. 179; Note, 59 Yale L.J. 1183 (1950). Courts may not entertain a habeas petition of a federal petitioner unless Section 2255 is "adequate or ineffective". In Barrett v. Hunter, 10 Cir., 1950, 180 F.2d 510, 20 A.L.R. 2d 965, certiorari denied 340 U.S. 897, 71 S.Ct. 234, 95 L.Ed. 650, the Court upheld the constitutionality of Section 2255 and held also that the motion, if adequate, replaced habeas. See Frank, Coram Nobis (1953), p. 93 et seq. As stated in United States v. Hayman, and quoted in United States v. Morgan, 1954, 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L. Ed. 248, "Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions". "Theoretically, it [habeas corpus] is effective only against judgments rendered without 'jurisdiction'. But courts have so expanded the common law concept of 'jurisdictional' defects that actually a prisoner can use the habeas writ against any judgment which violates due process or fairness in criminal proceedings. In fact, recent decisions bypass the outmoded concept of jurisdiction and treat directly the constitutional issues involved. Thus, the modern habeas writ and the motion under Section 2255 are substantive equivalents". Note, 59 Yale L.J. 786, 789 (1950). In general, see 4 Barron and Holtzoff, Federal Practice and Procedure § 2306. For a comparison of the Section 2255 motion with habeas corpus and coram nobis, see United States v. Morgan, 1954, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248.

■ The Great Writ is still the greatest writ. Nevertheless, even the Great Writ may not be used as a substitute for appeal or writ of error to reverse a judgment. Thus, in Howell v. United States, 4 Cir., 1949, 172 F.2d 213, 215, Judge Parker [6] held:

> "It is elementary that neither habeas corpus nor motion in the nature of application for writ of error coram nobis can be availed of in lieu of writ of error or appeal, to correct errors committed in the course of a trial, even though such errors relate to constitutional rights. It is only when there has been the denial of the substance of a fair trial that the validity of the proceedings may be thus collaterally attacked or questioned by motion in the nature of petition for writ of error coram nobis or under 28 U.S.C.A. 2255."

In Sunal v. Large, 1947, 332 U.S. 174, 181, 67 S.Ct. 1588, 1592, 91 L.Ed. 1982, the Supreme Court held:

> "Congress, moreover, has provided a regular, orderly method for correction of all such errors by granting an appeal to the Circuit Court of Appeals and by vesting us with certiorari jurisdiction. It is not uncommon after a trial is ended and the time for appeal has passed to discover that a shift in the law or the impact of a new decision has given increased relevance to a point made at the trial but not pursued on appeal. Cf. Warring v. Colpoys, supra [74 App.D.C. 303, 122 F.2d 642, 136 A.L.R. 1025]. If in such circumstances, habeas corpus could be used to correct the error, the writ would become a delayed motion for a new trial, renewed from time to time as the legal climate changed. Error which was not deemed sufficiently adequate to warrant an appeal would acquire new implication. Every error is potentially reversible error;

and many rulings of the trial court spell the difference between conviction and acquittal. If defendants who accept the judgment of conviction and do not appeal can later renew their attack on the judgment by habeas corpus, litigation in these criminal cases will be interminable."

In Sunal v. Large, the Supreme Court pointed out that the error did "not trench on any constitutional rights of defendants nor involve the jurisdiction of the trial court". In Bowen v. United States, 5 Cir., 1951, 192 F.2d 515, certiorari denied 343 U.S. 943, 72 S.Ct. 1036, 96 L.Ed. 1348, however, this Court applied the principle to a collateral attack based on lack of due process: "After all, while it is of the essence of the constitutional principles which mark and distinguish our system: that trials be conducted according to law; that in short, the government be obliged to control itself; and that when one has been convicted in violation of those principles he should be accorded relief; it is also of the essence: that the government be enabled to control the governed and to that end that judgments have finality; and that trials, conducted in accordance with law and ending in conviction, some day be at an end. Especially is it of the essence of orderly trials that the right to counsel accorded to defendants by the constitution be not regarded, as the argument here would seem to regard it, as a mere one way street such that, if the strategy and tactics of his trial counsel, in determining not to raise constitutional questions, prove unsuccessful, defendant, without appealing from the judgment, may many years later set it aside in order that, on another trial with another counsel, another course raising these questions may be taken, and so on *ad infinitum*." 192 F.2d 515, 517.

Similarly, in United States v. Sturm, 7 Cir., 1950, 180 F.2d 413, certiorari denied 339 U.S. 986, 70 S.Ct. 1008, 94 L.Ed. 1388 and in Smith v. United States, 1950, 88

---

6. Judge Parker was Chairman of the Judicial Conference Committee on Habeas Corpus, responsible for sponsoring Section 2255. See Parker, Limiting the Abuse of Habeas Corpus, 1949, 8 F.R.D. 171.

U.S.App.D.C. 80, 187 F.2d 192, 197, certiorari denied 341 U.S. 927, 71 S.Ct. 792, 95 L.Ed. 1358 the court has held that where illegal confessions, violative of due process, were introduced at the trial the remedy was by appeal and not by Section 2255. In Sturm the petitioner, represented by counsel, pleaded guilty. In Smith, illegal confessions were introduced at the trial, and the defendant was not represented by counsel. Judge Fahy, for the Court in Smith, held: "Such admission alone does not result in the denial of a constitutional guaranty so long as the error is subject to correction on appeal and there is no indication of any deterrent to appeal, such as lack of counsel. Accordingly, in such circumstances the method of correction must be direct, not collateral." See also Adams v. United States, 1955, 95 U.S.App.D.C. 354, 222 F.2d 45.

The question of prejudicial newspaper publicity was raised in a section 2255 motion in Wingo v. United States, 6 Cir., 1957, 244 F.2d 800. The Sixth Circuit held: "The question presented could have and should have been raised by motion for mistrial in the trial of the case in the District Court. No appeal was taken from the judgment on the verdict. Compare Briggs v. United States, supra [6 Cir., 221 F.2d 636].; Krogmann v. United States, 6 Cir., 225 F.2d 220, 228. The provisions of Section 2255, Title 28 U.S.Code, cannot be used as a substitute for appeal."

In the recent case of Hodges v. United States, —— F.2d ——, the Court of Appeals for the District of Columbia held that a motion under Section 2255 attacking an unappealed conviction on the ground of a coerced confession, "is not available in the complete absence of any attempt to excuse the failure to appeal, and in the absence also of a showing that collateral remedy is required in order to avoid manifest injustice".[7]

In Hodges the Court relied, in part, on Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761. Darr v. Burford required the prisoner first to exhaust his state remedies, including all appellate remedies, before applying to a federal court for a writ of habeas corpus. Darr v. Burford was based on Section 2254, Title 28, which for state prisoners is the counterpart of Section 2255 for federal prisoners. In Brown v. Allen, 1952, 344 U.S. 443, 73 S.Ct. 397, 422, 97 L.Ed. 469, the Supreme Court said: "Of course, federal habeas corpus is allowed where time has expired without appeal when the prisoner is detained without opportunity to appeal because of lack of counsel, incapacity, or some interference by officials. * * * Failure to appeal is much like a failure to raise a known and existing question of unconstitutional proceeding or action prior to conviction or commitment. Such failure, of course, bars subsequent objection to conviction on those grounds." See also Re Spencer, 1913, 228 U.S. 652, 660, 33 S.Ct. 709, 57

7. The Court stated also: "Although section 2255 contains no provision for exhaustion of federal appellate remedies before a collateral attack upon a federal sentence may be sustained, the orderly administration of criminal law by the federal courts, of somewhat comparable rank with comity, is involved in such an attack when no appeal has been prosecuted from the judgment of conviction and no reason advanced for the omission to appeal. We remain of the view that the right of appeal may not be abandoned and resort had to section 2255 whenever the conviction rests on evidence admitted at the trial in violation of a constitutionally protected right. Otherwise the appellate process to cure error in the admission of evidence would be *pro tanto* atrophied. One under sentence by a federal court in such a case could simply ignore his right of appeal and resort to section 2255 at any time, and if he could do this for violation of the 'Constitution' he could do the same for violation of the 'laws of the United States,' for these are bracketed on an equal footing in the context of section 2255. Yet that section is not an enlargement of the area of collateral attack theretofore available by habeas corpus; that is to say, the constitutional ground referred to in section 2255 remains one arising only in such circumstances as to be assertible collaterally rather than directly, as is the case when the ground asserted is a violation of the 'laws of the United States.'" Hodges v. United States, D.C.Cir., — F.2d —.

L.Ed. 1011; Re Wood, 1891, 140 U.S. 278, 11 S.Ct. 738, 35 L.Ed. 505.

United States v. Rosenberg, 2 Cir., 1952, 200 F.2d 666, 668, certiorari denied 345 U.S. 965, 73 S.Ct. 949, 97 L.Ed. 1384, rehearing denied 345 U.S. 1003, 73 S.Ct. 1151, 97 L.Ed. 1397, illustrates another aspect of the problem that is important in the instant case. The facts are similar in that the prisoner's motion under Section 2255 complained of his inability to have a fair trial because of widespread prejudicial publicity. The Court, very properly we think, held:

"When a defendant believes that pretrial publicity has been such as to render impossible the selection of an impartial jury, there are well-recognized methods of raising this issue before the trial commences. He may move for a change of venue or for a continuance until the public clamor shall have subsided. The petitioners took neither of these courses. * * * Nor do they allege that any trial juror was in fact prejudiced by the publicity now asserted to have made a fair trial impossible. * * * Moreover, Sobell's petition alleges that the publicity concerning Julius Rosenberg 'obviously rebounded to the prejudice of all defendants.' If so, this should have been as obvious to him at the time of trial as now. * * * When publicity believed to be prejudicial occurs during a trial, the defendant may move for a mistrial or may request the trial judge to caution the jury to disregard it. United States v. Weber, 2 Cir., 197 F.2d 237, 239. In this case the defendants did neither. We may assume that, in this case, a cautionary instruction would not suffice, and that, if defendants had then moved for a mistrial, it should have been granted. But they did not so move. This was their deliberate choice after conferring with the judge out of the presence of the jury. * * * Having themselves so concluded, they may not, after an adverse verdict, ask the court to reach a contrary conclusion."

See also Adams v. United States, 1943, 317 U.S. 269, 281, 63 S.Ct. 236, 87 L.Ed. 268; Carruthers v. Reed, 8 Cir., 1939, 102 F.2d 933, 938; United States ex rel. Marshall v. Snyder, 2 Cir., 1947, 160 F.2d 351; United States v. Robinson, W.D. Ky.1956, 143 F.Supp. 286.

In United States v. Cornett, D.C.W.D. Ky.1956, 142 F.Supp. 764, 770, affirmed 6 Cir., 245 F.2d 118, the defendant filed a section 2255 motion to vacate a conviction of murder. The Court held that:

"The defendant in this case, represented by competent counsel of his own selection and employment, accepted the judgment of conviction and did not prosecute an appeal. Hence, the doctrine of the Sunal case is applicable, that is, Section 2255 of Title 28 can not be the means of affording a substitute for an appeal."

We extract two principles from our review of the habeas corpus cases and the Section 2255 cases. First, as a prerequisite, the prisoner must exhaust his remedies, including resort to appeal. As has been said many times, neither habeas corpus nor Section 2255 may be used as a substitute for appeal. Second, failure to appeal, like failure to raise a known question of unconstitutionality, bars resort to habeas corpus and Section 2255, if the record indicates a conscious election not to appeal. We are reluctant, however, to generalize too broadly where the habeas corpus and Section 2255 are concerned. The Great Writ and its little brother, Section 2255, cannot be compressed within a stereotyped generalization. We do not say, therefore, that in every instance, before resort can be had to Section 2255 there must be an appeal. We say only that, in the circumstances of this case, Larson, taking a calculated risk, made a free choice not to jeopardize his life, and he is bound by that decision. Larson, represented by able counsel, did not move for a change of venue, he withdrew his

motion for a new trial, and he did not appeal. Whatever errors there were in his trial were known to Larson and to his counsel—for the same errors formed the basis for Juelich's appeal. Manifest justice to an accused person requires only that he have an opportunity to correct errors that may have led to an unfair trial. The orderly administration of justice requires that even a criminal case some day come to an end.

Larson cast the die in 1953. He won his throw: his life was not jeopardized, as was Juelich's by a new trial. He is not entitled to another cast.

Judgment is affirmed.